Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICIA HOLNESS,<br><br>    Plaintiff,<br><br>    v.<br><br>SAILPOINT TECHNOLOGIES HOLDINGS, INC., WILLIAM BOCK, RON GREEN, MARK MCCLAIN, CAM MCMARTIN, HEIDI MELIN, TRACEY E. NEWELL, JIM PFLAGING, SUDHAKAR RAMAKRISHNA, and MIKE SULLIVAN,<br><br>    Defendants. | Case No:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Patricia Holness ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.      This is an action against SailPoint Technologies Holdings, Inc. ("SailPoint" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

1

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of SailPoint by Thoma Bravo, L.P. ("Thoma Bravo").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of SailPoint common stock.

7. Defendant SailPoint provides enterprise identity security solutions in the United States, Europe, the Middle East, Africa, and internationally. The Company is incorporated in

Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "SAIL."

8. Defendant William Bock ("Bock") is a director of the Company.

9. Defendant Ron Green ("Green") is a director of the Company.

10. Defendant Mark McClain ("McClain") is founder, Chief Executive Officer, and a director of the Company.

11. Defendant Cam McMartin ("McMartin") is a director of the Company.

12. Defendant Heidi Melin ("Melin") is a director of the Company.

13. Defendant Tracey E. Newell ("Newell") is a director of the Company.

14. Defendant Jim Pflaging ("Pflaging") is a director of the Company.

15. Defendant Sudhakar Ramakrishna ("Ramakrishna") is a director of the Company.

16. Defendant Mike Sullivan ("Sullivan") is a director of the Company.

17. Defendants Bock, Green, McClain, McMartin, Melin, Newell, Pflaging, Ramakrishna, and Sullivan are collectively referred to herein as the "Individual Defendants."

18. Defendants SailPoint and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

19. On April 11, 2022, SailPoint announced that it had entered into a definitive agreement to be acquired by Thoma Bravo for $65.25 per share in cash. The press release announcing the Proposed Transaction states, in pertinent part:

**SailPoint to be Acquired by Thoma Bravo for $6.9 Billion**

*SailPoint stockholders to receive $65.25 per share in cash*

3

*Deal price represents a 48% premium to the 90-day VWAP*

*SailPoint to become a privately held company upon completion of the transaction*

April 11, 2022 06:45 AM Eastern Daylight Time

AUSTIN, Texas--(BUSINESS WIRE)--SailPoint Technologies Holdings, Inc. (NYSE: SAIL), the leader in enterprise identity security, today announced that it has entered into a definitive agreement to be acquired by Thoma Bravo, a leading software investment firm, in an all-cash transaction that values SailPoint at approximately $6.9 billion.

Subject to the terms of the Agreement, SailPoint stockholders will receive $65.25 per share in cash, representing a premium of 48% to SailPoint's 90-day volume-weighted average price (VWAP). Upon completion of the transaction, SailPoint will become a privately held company with the flexibility and resources to continue providing industry-leading identity security solutions to modern enterprises around the world. Additionally, SailPoint will benefit from the operating capabilities, capital support, and deep software expertise of Thoma Bravo.

\*   \*   \*

**Transaction Details**

A Special Committee of the Board of Directors of SailPoint has unanimously recommended, and following that recommendation, the Board has unanimously approved, the agreement with Thoma Bravo, and the Board unanimously recommends that SailPoint stockholders vote in favor of the transaction at the Special Meeting of Shareholders to be called in connection with the transaction.

The agreement includes a "go-shop" period expiring at 11:59 p.m. Eastern time on May 16, 2022, which allows the Board and its advisors to actively initiate, solicit and consider alternative acquisition proposals from third parties. The Board will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and SailPoint does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or otherwise required.

The transaction is expected to close in the second half of 2022, subject to customary closing conditions, including approval by SailPoint stockholders and receipt of regulatory approvals. Upon closing of the transaction, SailPoint's common stock will no longer be listed on any public market. The Company will continue to be headquartered in Austin, Texas. Financing for the transaction is being provided by Golub Capital, Blackstone Credit and Owl Rock Capital.

**Advisors**

Morgan Stanley & Co. LLC is serving as financial advisor and Goodwin Procter LLP is serving as legal counsel to SailPoint. Kirkland & Ellis LLP is serving as legal counsel to Thoma Bravo.

**About SailPoint**

SailPoint is the leader in identity security for the modern enterprise. Harnessing the power of AI and machine learning, SailPoint automates the management and control of access, delivering only the required access to the right identities and technology resources at the right time. Our sophisticated identity platform seamlessly integrates with existing systems and workflows, providing the singular view into all identities and their access. We meet customers where they are with an intelligent identity solution that matches the scale, velocity and environmental needs of the modern enterprise. SailPoint empowers the most complex enterprises worldwide to build a security foundation grounded in identity security.

**About Thoma Bravo**

Thoma Bravo is one of the largest private equity firms in the world, with more than $103 billion in assets under management as of December 31, 2021. The firm invests in growth-oriented, innovative companies operating in the software and technology sectors. Leveraging the firm's deep sector expertise and proven strategic and operational capabilities, Thoma Bravo collaborates with its portfolio companies to implement operating best practices, drive growth initiatives and make accretive acquisitions intended to accelerate revenue and earnings. Over the past 20 years, the firm has acquired or invested in more than 375 companies representing over $190 billion in enterprise value. The firm has offices in Chicago, Miami and San Francisco. For more information, visit www.thomabravo.com.

20.     On May 31, 2022, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

21.     The Proxy Statement, which recommends that SailPoint shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the financial analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"), in connection with its fairness opinion; (ii) potential conflicts of interest

5

involving Morgan Stanley; and (iii) potential conflicts of interest involving Company insiders.

22. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the Board of Directors and Reasons for the Merger; and (ii) Opinion of Morgan Stanley & Co. LLC.

23. Unless and until the material misstatements and omissions (referenced below) are remedied before the June 30, 2022 shareholder vote on the Proposed Transaction, SailPoint shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning Morgan Stanley's Analyses**

24. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Morgan Stanley.

25. With respect to Morgan Stanley's "*Public Trading Comparables Analysis*," the Proxy Statement fails to disclose the individual financial metrics of each company Morgan Stanley observed in its analysis.

26. With respect to Morgan Stanley's "*Discounted Equity Value Analysis*," the Proxy Statement fails to disclose the individual inputs and assumptions underlying the multiples and discount rates used in the analysis.

27. The Proxy Statement fails to disclose the following concerning Morgan Stanley's "*Discounted Cash Flow Analysis*": (1) the terminal values of SailPoint; (2) the individual inputs and assumptions underlying the discount rates and perpetual growth rates used in the analysis; and (3) the net debt and the net present value of net operating losses.

28. The Proxy Statement fails to disclose the following concerning Morgan Stanley's "*Precedent Transactions Multiples Analysis*": (1) the individual financial metrics of each

6

transaction Morgan Stanley observed in its analysis; (2) the closing date of each transaction; and (3) the value of each transaction.

29. With respect to Morgan Stanley's "*Illustrative Precedent Premiums*" analysis, the Proxy Statement fails to disclose the transactions observed and the premiums paid therein.

30. The Proxy Statement fails to disclose the following concerning Morgan Stanley's "*Equity Research Analysts' Future Price Targets*" analysis: (1) the individual price targets observed by Morgan Stanley in its analysis; and (2) the sources thereof.

31. The valuation methods, underlying assumptions, and key inputs used by Morgan Stanley in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Morgan Stanley's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

32. Without the information described above, the Company's shareholders are unable to fully understand Morgan Stanley's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Potential Conflicts of Interest Involving Morgan Stanley

33. The Proxy Statement omits material information concerning potential conflicts of interest involving Morgan Stanley.

34. The Proxy Statement provides that, "[i]n the two years prior to the date hereof, [Morgan Stanley] ha[s] *provided financial advisory* and financing services to Thoma Bravo L.P. . . . and its majority-controlled affiliates and portfolio companies (collectively the "Thoma Bravo Related Entities"), and, in each case, have received fees in connection with such services."

7

35. Yet, the Proxy Statement fails to disclose the amount of compensation that Morgan Stanley received or expects to receive for providing "financial advisory" services to Thoma Bravo and its affiliates.

36. The Proxy Statement further fails to disclose the timing and nature of the past services that Morgan Stanley and/or its affiliates provided to SailPoint, Thoma Bravo, and/or their affiliates in the thirty months prior to the date of Morgan Stanley's fairness opinion.

37. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

38. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**3. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest**

39. The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

40. The Proxy Statement fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

41. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is

necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

42. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

43. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

45. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

46. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

47. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

48. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

49. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

50. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

52. In particular, each of the Individual Defendants had direct and supervisory

involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

53. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and

any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 2, 2022

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
         zhalper@halpersadeh.com

*Counsel for Plaintiff*